# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| HOLLY GREGORY, : | Case No. 1:18-cv-824 |
|     Plaintiff, : | |
| : | Judge Timothy S. Black |
| vs. : | |
| : | |
| WEST CLERMONT LOCAL SCHOOL : | |
| DISTRICT BOARD OF EDUCATION, : | |
| : | |
|     Defendant. | |

## ORDER GRANTING IN PART
## DEFENDANT'S PARTIAL MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT (Doc. 5)

This civil case is before the Court on Defendant West Clermont Local School District Board of Education ("West Clermont")'s partial motion to dismiss Plaintiff's complaint (Doc. 5) and the parties' responsive memoranda (Docs. 7, 8).

Plaintiff, Holly Gregory, alleges on her own behalf and on behalf of her minor son, "G.G.," that West Clermont failed to timely evaluate G.G. and accommodate his educational needs. (Doc. 1). Plaintiff also alleges that on one occasion, West Clermont restrained G.G. in a mat, and that on another occasion, West Clermont videotaped G.G. at school without consent. (*Id.*). Plaintiff's complaint sets forth several federal and state claims. However, Plaintiff has voluntarily dismissed her state-law claims (Counts IV, V, VIII, and IX). (See Doc. 7 at 1). Defendant's partial motion to dismiss challenges the following remaining federal claims: (1) Fourteenth Amendment Procedural Due Process violation (Count III), (2) Fourth Amendment unreasonable seizure and use of excessive

force (Count VI), and (3) Fourth Amendment right to privacy violation (Count VII).[1] (Doc. 5 at 3).

## I. BACKGROUND

For purposes of Defendant's motions to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff, and (2) take all well-pleaded factual allegations as true. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

Gregory had early indications that her now eight-year-old son, G.G., has special needs. (Doc. 1 at ¶¶ 4, 24). When G.G. was three-years old, Gregory was told that G.G. may need a speech and language therapist. (*Id.* at ¶ 27). G.G. also had panic attacks and aggressive tantrums as early as preschool. (*Id.*). In 2015, Cincinnati Children's Hospital Medical Center diagnosed G.G. with learning and behavioral challenges. (*Id.* at ¶ 28).

Beginning in October 2016, Gregory had a series of communications with G.G.'s teacher and West Clermont concerning Gregory's disruptive behavior at school, which included yelling out, smacking the table, kicking the garbage can, climbing on top of the file cabinet and windowsill, hitting his teacher, and biting and spitting on another student. (*Id.* at ¶¶ 29-32, 34-43). Due to these incidents, G.G. was removed from the classroom and had to be picked up early by his mother on several occasions. (*Id.* at ¶¶ 31, 34, 38, 42, 44). Gregory's communications with G.G.'s teacher and West Clermont by e-mail expressed that she did not want G.G. to "get behind because his behavior is an

---

[1] Plaintiff's complaint also asserts the following federal claims that are not subject to Defendant's partial motion to dismiss: (1) violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") (Count I), and (2) Fourteenth Amendment Equal Protection violation (Count II). (Doc 1 at ¶¶ 63-71).

impairment," and requested an evaluation of G.G.'s eligibility for an individualized education plan ("IEP"). (*Id.* at ¶¶ 29, 30, 38, 42).

In May 2017, a private assessment diagnosed G.G. with ADHD-Combined Type and Oppositional Defiance Disorder-Moderate Severity. (*Id.* at ¶ 33). Later that year, in September 2017, Gregory wrote to G.G.'s teacher that "last year . . . there was talk of seeing if he qualified for an IEP with a possible help of an aid[e] but it kept getting pushed back and nothing ever happened." (*Id.* at ¶ 35). In October 2017, the principal told Gregory that she had been unable to calm down G.G. for over an hour and a half, had contemplated calling the police and an ambulance to come pick him up, and suggested that Gregory take G.G. to the hospital for an evaluation. (*Id.* at ¶ 38). Gregory wrote to West Clermont on October 25, 2017 about this incident, telling the school district that "[i]f a meeting had been set up a month ago like I had requested we might have a better handle on the situation now." (*Id.*). Then, on October 31, 2017, Gregory informed West Clermont that she was requesting an "emergency meeting," explaining that she had to pick up G.G. early five times and was concerned about him missing valuable educational time. (*Id.* at ¶ 42). On November 1, 2017, West Clermont indefinitely suspended G.G. due to his behavioral issues, stipulating that "G.G. may return to school when he has documentation from a physician or therapist that he is not a threat to himself or others." (*Id.* at ¶ 44).

Six days later, on November 7, 2017, Gregory submitted a written request for an independent education evaluation, which was denied. (*Id.* at ¶ 45). Gregory proceeded to file an administrative due process complaint against West Clermont. (*Id.* at ¶ 47). West

3

Clermont ultimately declared G.G. eligible for special education. (*Id.*). West Clermont also recommended language services and noted G.G.'s "dysfunction with sensory processing" and inability to "self-regulate in order to calm himself down." (*Id.* at ¶¶ 50, 53, 54). After G.G.'s evaluations, West Clermont concluded that, "[e]valuation data shows that [G.G.] shows significantly more hyperactivity/impulsivity than same age peers, shows significant concerns at home and at school related to showing inappropriate behavior to typical circumstances and a general mood of unhappiness, pragmatic language concerns, and sensory concerns." (*Id.* at ¶ 55).

Based on these facts, Plaintiff alleges that West Clermont violated G.G. and Gregory's Fourteenth Amendment procedural due process rights (Count III). (*Id.* at ¶¶ 72-75). Plaintiff more specifically alleges that Defendant "continuously deprived G.G. of an appropriate public school education without due process of law by unilaterally predetermining to withhold his eligibility for an IEP and the specially designed instruction, related services, accommodations, and modifications provided by an IEP." (*Id.* at ¶ 73).

Furthermore, Plaintiff alleges that on January 24, 2018, "West Clermont restrained G.G. by wrapping him in a mat at school" "without authorization" constituting an unconstitutional seizure and excessive use of force under the Fourth Amendment (Count VI). (*Id.* at ¶¶ 48, 83).

Finally, Plaintiff alleges that West Clermont violated G.G.'s Fourth Amendment right to privacy by videotaping G.G. at school without consent (Count VII). (*Id.* at ¶ 86). Defendant has moved to dismiss each of these claims. (Doc 5).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Federal Rule of Civil Procedure 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### III.  ANALYSIS

#### A.  **Fourteenth Amendment Due Process Claim**

First, the Court will assess Defendant's motion to dismiss Count III of Plaintiff's complaint, which alleges that West Clermont violated G.G.'s Fourteenth Amendment procedural due process rights by "continuously depriv[ing] G.G. of an appropriate public school education without due process of law by unilaterally predetermining to withhold his eligibility for an IEP and the specially designed instruction, related services, accommodations, and modifications provided by an IEP." (Doc. 1 at ¶ 73).

Defendant asserts that this claim, in substance, alleges a violation of the Individuals with Disabilities Education Act ("IDEA"), and that it should be dismissed because Plaintiff released West Clermont from claims arising under the IDEA in the settlement agreement that resolved Gregory's administrative due process complaint. (Doc. 5 at 5-7).  Defendant also argues Plaintiff failed to exhaust administrative remedies prior to filing this claim.  (*Id.* at 6).

In response, Plaintiff asserts that the same unlawful conduct may simultaneously violate the IDEA and the Constitution.  (Doc. 7 at 3).  Thus, Plaintiff asserts that her Fourteenth Amendment procedural due process claim falls outside the scope of the release-of-claims provision contained in the parties' settlement agreement.  (*Id.*). Plaintiff further argues that the compensatory damages Plaintiff now seeks for an alleged

deprivation of constitutional rights could not have been awarded through the administrative process. (*Id.*).

The Court finds that Plaintiff adequately distinguishes the instant procedural due process claim as one arising under the Fourteenth Amendment, and not the IDEA. Thus, the claim is not barred by the parties' prior settlement agreement. The IDEA and its implementing regulations provide several procedural protections to ensure children in need of an IEP are identified and provided a free and appropriate education ("FAPE"). *See* 20 U.S.C. § 1415; 34 C.F.R. § 300.504; *see also* Ohio Admin. Code 3301-51-05. For example, school districts are required to provide written notice to parents whenever they "propose to initiate or change" or "refuse to initiate or change" "the identification, evaluation, or educational placement of the child, or the provision of a free and appropriate public education to the child." *See* 20 U.S.C. § 1415(b)(3). A parent may file a complaint "as to any matter concerning the provision of a [FAPE]," § 1415(b)(6), which "generally triggers a preliminary meeting involving the contending parties," or at the election of the parties, a "full-fledged mediation process." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017) (citing §§ 1415(f)(1)(B)(i), 1415(e)). If the parties remain unable to resolve the dispute, the matter continues on to a due process hearing before an impartial officer. *Id.* The officer's decision may be appealed to the state agency whose final decision is subject to judicial review. *Id.*

Yet, the IDEA is not the exclusive mechanism by which a plaintiff may sue to vindicate her right to an appropriate education. *See Fry*, 137 S. Ct. at 750. Section 1415(l) of the IDEA provides as follows:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

20 U.S.C. § 1415(l). Accordingly, a plaintiff may bring a claim under the Constitution related to the denial of a FAPE, with the caveat that she must first exhaust the IDEA's administrative procedures. *Fry*, 137 S. Ct. at 750.

Gregory devotes much of the complaint to explaining the procedural requirements of the IDEA (Doc. 1 at ¶¶ 14-17) and she asserts in the body of the complaint that by not formally assessing G.G. for suspected disabilities, West Clermont violated the procedural requirements of the IDEA. (*Id.* at ¶ 12). Nevertheless, Plaintiff's procedural due process claim contained in Count III asserts a violation of the Fourteenth Amendment, not the IDEA; stating that "G.G. has a *constitutionally protected* property right to an appropriate public education" that "cannot be removed without proper prior notice and an opportunity to be heard." (*Id.* at ¶ 73) (emphasis added). The claim further states that "West Clermont continuously deprived G.G. of an appropriate public school education without due process of law by unilaterally predetermining to withhold his eligibility for an IEP and the specially designed instruction, related services, accommodations, and modifications provided by an IEP." (*Id.*). That the conduct alleged would also constitute a violation of the procedures guaranteed by the IDEA does not preclude Plaintiff's constitutional challenge. Leaving the merits of Gregory's Fourteenth Amendment due

8

process claim aside, the Court is not persuaded by Defendant's argument that Plaintiff's claim is, in substance, a claim alleging a violation of the IDEA.

Because Plaintiff's due process claim is based on a violation of the Fourteenth Amendment, the Court finds that the claim is not barred by the parties' settlement agreement releasing Defendant from claims under the IDEA. The Court will consider the settlement agreement attached to Defendant's partial motion to dismiss without transforming the motion into one for summary judgment, as the agreement was at least alluded to in Plaintiff's complaint and is essential to assessing the viability of Plaintiff's due process claim. *See Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.").

The agreement states that Gregory releases West Clermont "from any and all claims . . . *under IDEIA*, including, but not limited to, the issues relating to the evaluation of, placement of, provision of special education to [G.G.] up to the date of this Agreement." (Doc. 5-1 at 3 ¶ 7) (emphasis added). The agreement further states that "[s]pecifically excluded from release . . . [are] claims for *non-IDEA* violations arising before this Agreement." (*Id.*) (emphasis added). Thus, it is at best ambiguous as to whether the parties intended to release Defendant from Plaintiff's Fourteenth Amendment due process claim premised on conduct that also violates the IDEA. This case presents a closer call than other cases addressing the scope of similar release-of-claims provisions, since the underlying conduct soundly relates to denial of a FAPE under the IDEA. *See,*

9

*e.g.*, *F.H. v. Memphis City Sch.*, 764 F.3d 638, 643 (6th Cir. 2014) (finding settlement agreement resolving IDEA claims did not bar later claims based on physical abuse where agreement released defendant from claims "arising under the IDEA" that "could have been[] asserted in the Due Process Proceeding"); *A.L. v. Ann Arbor Pub. Sch.*, No. 10-cv-10354, 2011 WL 87262, at *3, 7-8 (E.D. Mich. Jan. 11, 2011) (finding settlement agreement did not bar later § 1983 claim based on sexual assault where agreement released defendant from claims "arising out of the facts and circumstances alleged in the Proceedings that . . . could have been brought . . . under the IDEA only."). Nevertheless, because in this case, the release-of-claims provision expressly releases claims "under IDEA" (as opposed to "arising under IDEA"), and excludes from release claims for "non-IDEA violations," the Court cannot find, based on the plain language of the agreement, that Plaintiff's instant Fourteenth Amendment due process claim has been waived.

Defendant's next argument, that Plaintiff has not exhausted IDEA procedures is somewhat awkward following its prior argument that the parties' settlement agreement encompassed the conduct underlying Plaintiff's instant due process claim. For the reasons discussed below, the Court finds that the parties' settlement of Plaintiff's IDEA claims based on West Clermont's failure to timely assess and provide services to G.G. demonstrates exhaustion of available IDEA remedies for Plaintiff's Fourteenth Amendment due process claim.

A plaintiff must exhaust under the IDEA "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even when not phrased or framed precisely that way." *Fry*, 137 S. Ct. at 755. Although Plaintiff's claim is asserted as a

constitutional violation and not as a violation of the IDEA, it is subject to the IDEA's exhaustion requirement, as the core of Plaintiff's claim is that West Clermont did not timely identify G.G. and provide him with an IEP pursuant to their obligations under the IDEA. However, "[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights. Nor is exhaustion required if the plaintiffs were not given full notice of their procedural rights under the IDEA." *Sharbowski v. Utica Cmty. Sch.*, No. 18-cv-10869, 2019 WL 587274, at *6 (E.D. Mich. Feb. 13, 2019) (citing *Covington v. Knox County School Sys.*, 205 F.3d 912, 917 (6th Cir. 2000)). The burden of demonstrating an exception to the exhaustion requirement is on the party seeking to bypass the administrative procedures. *Id.* Moreover, a "mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary . . . ." *Covington*, 205 F.3d at 917. The IDEA provides for reimbursement of past education-related expenses, but does not otherwise permit recovery in the form of "general damages." *Id.* at 916 n.6.

Plaintiff filed an administrative due process complaint following West Clermont's denial of her request for an independent educational evaluation of G.G. (Doc. 1 at ¶ 45). The settlement agreement between the parties resolving Plaintiff's administrative complaint resulted in West Clermont developing an IEP for G.G., as well as the creation of a reimbursement fund. (Doc. 5-1 at 2). Thus, Plaintiff has received relief to the extent it is available under the IDEA for West Clermont's failure to timely evaluate G.G. and provide him an IEP. Accordingly, the parties' settlement agreement sufficiently demonstrates that Plaintiff exhausted administrative remedies prior to bringing the instant

11

constitutional due process claim. *See Covington*, 205 F.3d at 917 (citing *W.B. v. Matula*, 67 F.3d at 95-96 (3d Cir. 1995) (finding exhaustion of IDEA where parties settled IDEA claims and damages sought were not available under IDEA)). Plaintiff will undoubtably face challenges demonstrating the denial of a constitutionally-protected interest, as well as demonstrating that the available procedural remedies were inadequate, but those issues were not raised by the Defendant and are not presently before the Court. Accordingly, Defendant's motion for partial dismissal will be denied as to Plaintiff's Fourteenth Amendment due process claim alleged in Count III of the complaint.

### B. Fourth Amendment Unreasonable Seizure and Use of Excessive Force

Plaintiff also asserts, in Count VI of the complaint, that West Clermont violated G.G.'s Fourth Amendment rights when Defendant, on one occasion, "restrained G.G. by wrapping him in a mat at school." (Doc. 1 at ¶ 48). Plaintiff alleges that this conduct constituted both an unreasonable seizure and an excessive use of force. (*Id.*). With respect to Plaintiff's unreasonable seizure claim, West Clermont concedes that Plaintiff has adequately pled that a seizure occurred, but argues that Plaintiff has insufficiently pled that the seizure was unreasonable. (Doc. 5 at 11-12). Moreover, Defendant argues that Plaintiff's excessive use of force claim should be dismissed, because Plaintiff has failed to plead facts egregious enough to meet the substantive due process "shocks the conscience" standard. (*Id.* at 10).

Addressing Plaintiff's unreasonable seizure claim first, the Court finds that Plaintiff has sufficiently pled facts from which the Court could reasonably infer that Defendant unlawfully seized G.G. by wrapping him in a mat. The Fourth Amendment,

which protects "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures," applies to children when they are at school. *See H.M. v. Bd. of Educ.*, No. 1:14-cv-64, 2015 WL 4624629 at *7 (S.D. Ohio Aug. 3, 2015) (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 336-37 (1985)). To determine whether an unlawful seizure has occurred, a court must first determine whether there was a "seizure" under the Fourth Amendment. *Crochran v. Columbus City Sch.*, 748 F. App'x 682, 685 (6th Cir. 2018). Typically, to determine whether a seizure has occurred for Fourth Amendment purposes, courts consider whether "a reasonable person would have believed that he was not free to leave." *H.M.*, 2015 WL 4624629 at *7. Yet, "[c]ourts 'must think about seizures differently in the school context, as students are generally not at liberty to leave the school building when they wish." *Crochran*, 748 F. App'x at 685 (quoting *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1250-51 (10th Cir. 2008)). Thus, in the school context, courts consider whether "the limitation on the student's freedom of movement . . . significantly exceed[ed] that inherent in every-day compulsory attendance." *Id.*

Here, Defendant concedes that Plaintiff has adequately pled that a seizure occurred under the Fourth Amendment by alleging G.G. was restrained with a mat. (Doc. 5 at 11). The Court agrees, and finds that wrapping a child in a mat significantly exceeds the usual restrictions on a child's freedom of movement inherent in school attendance. *See Crochran*, 748 F. App'x at 685 (finding use of a "body sock," a therapeutic, full-body suit that may cover a child's head, constituted a seizure).

13

Once a court has established that a seizure occurred, it must next consider whether that seizure was justified at its inception and whether the seizure was permissible in scope. *Id.* A seizure is "permissible in its scope when the measures adopted are reasonably related to the objective of the [seizure] and not excessive [ ] . . . in light of the age and sex of the student and the nature of the infraction." *Id.* at 685-86 (quoting *T.L.O.*, 469 U.S. 325, 342 (1985)). Courts may also take into account a child's disabilities when assessing the reasonableness of a seizure. *See H.M.*, 2015 WL 4624629 at *7.

The entirety of the facts supporting Plaintiff's unlawful seizure claim is a single sentence, stating that "[o]n January 24, 2018, and without authorization, West Clermont restrained G.G. by wrapping him in a mat." (Doc. 1 at ¶ 48). But, we also know from the complaint that G.G. was eight years old as of the date the complaint was filed in November 2018, and that G.G. has special needs, having been diagnosed with ADHD and Oppositional Defiance Disorder. (*Id.* at ¶ 55). The complaint also describes G.G. as having "significant difficulties with sustained attention and mental effort, and regulation of behavioral and emotional self-control." (*Id.* at ¶ 58). Although minimal, the Court finds that, at this early stage of the case, the facts alleged in the complaint are sufficient to raise the likelihood, above a speculative level, that Defendant unlawfully seized G.G.. Considering G.G.'s young age and special needs, as well as the nature of the seizure, it is plausible that wrapping G.G. in a mat was excessive.

The same cannot be said for Plaintiff's excessive use of force claim. Defendant is correct that an excessive use of force claim involving force exerted by a public school

official against a child is treated as a Fourteenth Amendment substantive due process claim, subject to the stringent "shocks the conscience" standard. *H.M.*, 2015 WL 4624629 at *4 (collecting cases); *see also E.H. v. Neal*, No. 3:16-cv-2605, 2018 U.S. Dist. LEXIS 93001 at *22 (same).[2] Plaintiff's argument to the contrary, relying on *S.R. v. Kenton County Sheriff's Office*, 302 F. Supp. 3d 821 (E.D. Ky. 2017), is unpersuasive. In *S.R. v. Kenton County*, the court applied the Fourth Amendment's reasonableness standard to an excessive force claim involving a School Resource Officer ("SRO")'s handcuffing of two children at school. 302 F. Supp. 3d at 833-34. However, this case is distinguishable, because, as the court pointed out school, SROs "wear two hats while serving in Kentucky schools, [and] it can be difficult to discern when their actions constitute those of school personnel or those of law enforcement." *Id.* at 832-33. This case does not involve a similar grey area. Based on the unique circumstances of *S.R. v. Kenton County*, the Court does not find that this single case renders inapplicable the large body of case law holding that the substantive due process "shocks the conscience" standard generally applies to the use of force by school officials against children.

Under the "shocks the conscience" standard, courts must consider "whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than merely careless or unwise excess of zeal

---

[2] Plaintiff's Fourth Amendment seizure claim may be maintained as a separate cause of action. *H.M. v. Bd. of Educ.*, 2015 WL 4624629, at *4; *see also Crochran*, 748 F. App'x at 685-86 (analyzing seizure and excessive force claims involving school child separately); *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (holding unlawful seizure and excessive force claims are distinct).

15

that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 678 (6th Cir. 2016). To analyze whether an official's conduct rises to this level in the public school context, courts consider four guiding questions: (1) "Was there a pedagogical justification for the use of force?" (2) "Was the force utilized excessive to meet the legitimate objective in this situation?" (3) "Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?" and (4) "Was there a serious injury?" *Id.* at 678-79 (quoting *Domingo v. Kowalksi*, 810 F.3d 403, 411 (6th Cir. 2016)).

Plaintiff's allegation that on a single occasion, Defendant wrapped G.G. in a mat without authorization, is insufficient to support a claim for excessive force. In response to Defendant's argument that the "shocks the conscience" standard applies to Plaintiff's claim of excessive use of force, Plaintiff maintains the (incorrect) position that her excessive force claim is premised on a violation of the Fourth Amendment, and is not subject to the Fourteenth Amendment's heightened "shocks the conscience" standard. (Doc. 7 at 4-5). Thus, Plaintiff does not so much as attempt to allege that the force used against G.G. meets the "shocks the conscience" standard. Plaintiff also asserts that additional discovery would be needed to uncover all material facts prior to the summary judgment stage. However, a plaintiff is not entitled to discovery to find facts necessary to plead a sufficient claim. *See Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).

Plaintiff provides no factual allegations regarding the circumstances of the incident involving the Defendant's restraint of G.G. in a mat. For instance, Plaintiff does not allege G.G. was restrained *without justification*, nor does she allege facts from which a lack of justification could be inferred. *Cf. H.M.*, 2015 WL 4624629 at *5 (allowing excessive force claim to proceed to discovery where complaint alleged that defendant's actions were taken without a pedagogical purpose and constituted "gratuitous and unjustified punitive physical violence that had no relationship to any legitimate education or other objective"); *see also Howard v. Knox Cty.*, 695 F. App'x 107, 114 n.1 (6th Cir. 2017) (finding plaintiff adequately pled abuse of public school children *without pedagogical purpose* where complaint alleged that defendant violently banged a child's head against a wall "because [he] hated to change [the child's] clothes after urination," resulting in, among other things, multiple yeast and kidney infections).

Similarly, Plaintiff has failed to allege facts to support a plausible finding that Defendant took the action not "in a good-faith effort to maintain or restore discipline," but rather, "sadistically for the very purpose of causing harm." *Gohl*, 836 F.3d at 678-79. Again, Plaintiff has failed to provide factual allegations concerning the circumstances of the incident or Defendant's purpose in taking the action; and the nature of the alleged conduct (i.e. restraining G.G. with a mat) does not, on its face, evince sadism as opposed to restoring order.

Plaintiff's complaint also does not allege that G.G. suffered a serious injury as a result of the alleged incident. While the Sixth Circuit has not established a "bright-line" requirement that a plaintiff demonstrate a serious physical injury, as opposed to a serious

17

psychological injury, the burden of establishing the seriousness of the injury is demanding. *Domingo*, 810 F.3d at 415-16 (finding no demonstration of serious injury where plaintiff alleged teacher strapped a child to a gurney in the hallway and gagged him with bandana). In the instant case, Plaintiff makes no factual allegations whatsoever regarding an injury suffered by G.G., either physical or psychological. The complaint merely states in boiler-plate fashion that, as a result of the incident involving the mat, "G.G. and Ms. Gregory suffered severe emotional distress, loss of educational opportunity, loss of consortium, expenditure of funds, and other damages." (Doc. 1 at ¶ 84). This conclusory statement does not amount to a sufficient allegation that G.G. suffered a serious injury. Accordingly, the Court will grant Defendant's motion to dismiss with respect to Plaintiff's excessive force claim contained in Count VI.

### C. Fourth Amendment Right to Privacy

Finally, Plaintiff has not sufficiently pled that Defendant violated G.G.'s Fourth Amended right to privacy by videotaping him in school. The complaint alleges that "[o]n October 25, 2017, West Clermont confirmed to Ms. Gregory that the school district had videotaped G.G. in school." (Doc. 1 at 12). The complaint further alleges under Count VII that the videotaping occurred "without consent." (*Id.* at ¶ 86). West Clermont has refused to provide Plaintiff a copy of the video. (*Id.* at ¶ 87). Defendant argues that this claim should be dismissed because Plaintiff has failed to allege that the videotaping was an unconstitutional search and has failed to provide factual allegations concerning the nature or details of the videotaping, making it impossible to discern whether the alleged taping invaded a protected privacy interest. (Doc. 5 at 13).

To reiterate, the Fourth Amendment's proscription against unreasonable searches and seizures applies to children in public schools, although "the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995); *T.L.O.*, 469 U.S. at 334. The Sixth Circuit has previously found that video surveillance in schools implicates a child's right to privacy under the Fourth Amendment. *Brannum v. Overton Cty. Sch. Bd.*, 516 F.3d 489, 494, 497 (6th Cir. 2008). More specifically, the court in *Brannum* found that a school violated students' right to privacy by engaging in video surveillance of students in a school locker room. 516 F.3d at 494, 497. Essential to the court's recognition of a privacy interest in that case was the already-established "significant privacy interest in [one's] unclothes bod[y]." *Id.* at 496 (citing *Beard v. Witmore Lake Sch. Dist.*, 402 F.3d 598, 605-06 (6th Cir. 2005) (finding strip search of student unconstitutional)). Also relevant to the court's finding was the secret and all-seeing nature of video surveillance. *Id.* at 495-97. Although the Sixth Circuit has recognized that video surveillance in a school locker-room invades a student's reasonable expectation of privacy, this holding cannot be understood to mean that the Fourth Amendment covers all instances in which a student is videotaped at school in any location (*i.e.,* classroom, hallway), in any manner, and for any duration, without parental consent.

Thus, Plaintiff's bare assertion that Defendant videotaped G.G. at school without consent on a particular date does not implicate the right to privacy under the Fourth Amendment. In other words, Plaintiff has failed to allege circumstances that, accepted as true, would constitute an invasion of G.G.'s reasonable expectation of privacy under the

19

Fourth Amendment. Plaintiff argues in her response brief that G.G. was not subject to general video-surveillance, but rather subjected to targeted filming by the Defendant. However, Plaintiff does not explain the legal significance of this distinction. Further, Plaintiff asserts that by requesting the video in discovery, she will have more information concerning the circumstances of the recording. However, as previously stated, a plaintiff is not entitled to discovery prior to a facial challenge to the complaint. *See, e.g.*, *Kolley*, 725 F.3d at 587. This is true even when the necessary facts are in the control of the defendant. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 472 (6th Cir. 2011). Consequently, the Defendant's motion to dismiss Count VII, asserting a violation of G.G.'s Fourth Amendment right to privacy will be granted.

### IV. CONCLUSION

Based upon the foregoing, Defendant's partial motion to dismiss Plaintiff's complaint (Doc. 5) is **GRANTED in part** and **DENIED in part** as follows:

a. Defendant's partial motion to dismiss is **GRANTED** as to Count VI to the extent Plaintiff asserts excessive use of force under the Fourth Amendment and Count VII (Fourth Amendment privacy); and

b. Defendant's partial motion to dismiss is **DENIED** as to Count III (Fourteenth Amendment procedural due process) and Count VI to the extent Plaintiff asserts unreasonable seizure under the Fourth Amendment. Those claims shall proceed.

**IT IS SO ORDERED.**

Date: 9/27/19

Timothy S. Black
United States District Judge